# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHECKS CASHED FOR LESS,<br><br>                     Appellant,<br>   v.<br><br>RICHARD KIPPERMAN,<br><br>                     Appellee. | Case No. 11cv2383 BTM(WVG)<br><br>**ORDER AFFIRMING BANKRUPTCY COURT DECISION** |

Appellant, the Debtor in the underlying Chapter 7 proceeding has filed an appeal from the bankruptcy court's Order Approving Final Application of Trustee for Compensation and Reimbursement of Expenses, entered on September 29, 2011.   For the reasons discussed below, the Court **AFFIRMS** the bankruptcy court's decision.

## I. FACTUAL BACKGROUND

On February 25, 2010, Checks Cashed for Less, Inc. ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code.  The Debtor scheduled unsecured claims of $794,250.00.  Appellee Richard M. Kipperman ("Trustee") was appointed Chapter 7 Trustee for the case.

The first § 341(a) meeting of creditors was held on March 26, 2010. Salam Mahmood, President of Checks Cashed for Less, Inc., and Debtor's counsel appeared at the meeting. (Appellee's Excerpt 13 at ¶ 2.)  The Trustee requested some additional information, including

a copy of the general ledger for Quick Books, three months of bank statements, and the originals of all checks that were represented by the Accounts Receivable listed in the schedules, and continued the hearing to April 26, 2010. (Id. at ¶ 3.)

After the March 26 meeting, Mr. Mahmood approached Debtor's attorney with concerns that he could potentially be sued for invasion of privacy if he provided the Trustee with the uncollected checks. (Id. at ¶ 4.) Mr. Mahmood also represented that he had been actively negotiating with all of the creditors and expected that all of the creditors' claims would be resolved outside of bankruptcy. (Id.) Mr. Mahmood asked that Debtor's counsel dismiss the case. (Id.)

Debtor's counsel advised Mr. Mahmood that if he failed to appear at the continued creditors' meeting, the case would most likely be dismissed. (Id. at ¶ 5.) Based on this advice, neither Mr. Mahmood or Debtor's counsel appeared at the April 26, 2010 meeting. (Id.) Accordingly, the Trustee continued the meeting to May 6, 2010. (Appellee's Excerpt 2 at 2.) Sometime thereafter, Debtor's counsel informed the Trustee about Mr. Mahmood's privacy concerns regarding the checks and told the Trustee that the Debtor was going to file a motion to dismiss. (Appellant Excerpt 14 at ¶¶ 7-8.) The Trustee went forward with the May 6, 2010 continued meeting, and Debtor again failed to appear. (Appellee's Excerpt 2 at 2.) The meeting was continued to July 13, 2010. (Id.)

On May 11, 2010, the Trustee sought an order declaring Mr. Mahmood to be the Debtor's authorized representative and compelling him to appear and testify on the Debtor's behalf at the continued creditors' meeting. (Appellee's Excerpt 2.) The court ordered Mr. Mahmood to show cause why he should not be appointed as the representative of Debtor and compelled to attend. (Appellee's Excerpt 5.)

On June 24, 2010, the Debtor filed a motion for dismissal of the case on the ground that "with the exception of one small creditor there are no creditors to be satisfied." (Appellee's Excerpt 5.) In a declaration in support of the motion to dismiss, Mr. Mahmood claimed that arrangements had been made between himself and creditors Bank of America, Kirby Noonan, Union Bank and Wells Fargo. (Appellee's Excerpt 6 at ¶¶ 3-7.) Mr. Mahmood

explained that the only other two creditors were his wife, Entsar Mahmood, and Beyond Voicemail. (Id. at ¶ 7.) As for his wife, those obligations would be worked out during divorce proceedings. (Id.) The claim of Beyond Voicemail was disputed. (Id.)

The Trustee opposed the motion to dismiss. (Appellee's Excerpt 8.) The Trustee pointed out that the settlement produced by Mr. Mahmood regarding Union Bank was only as to Mr. Mahmood and not the Debtor. The Trustee also submitted a declaration by Michael L. Kirby, who explained that his firm's claim against the Debtor had not been resolved. (Id.) Subsequently, the Trustee submitted an email from Union Bank's counsel, which stated that Union Bank settled with Mr. Mahmood only, and that Union Bank objected to the dismissal of the bankruptcy case. (Appellee's Excerpt 10, Ex. A.)

On July 21, 2010, the bankruptcy court granted the Trustee's motion to compel the Debtor's attendance at the rescheduled § 341(a) meeting. The bankruptcy court designated Mr. Mahmood as the Debtor representative and ordered Mr. Mahmood to appear at the continued § 341(a) meeting (then scheduled for August 18, 2010) and turn over all documents requested by the Trustee. (Bankr. Docket No. 46.) The hearing on the Debtor's motion to dismiss was continued to August 3, 2010.

On August 3, 2010, the court held a hearing on the motion to dismiss. At the hearing, the court agreed with the Trustee that the case should not be dismissed until the Debtor could provide documentation showing that the claims of Bank of America, Union Bank, and Entsar Mahmood had been resolved. (Appellant's Excerpt 15 at 7-8, 13.) By the time of the hearing, the claim of Kirby Noonan had been satisfied. (Id. at 6, 13.) The court continued the hearing to allow the Debtor to provide additional information regarding the claims at issue. (Id. at 16. ) The court also continued the § 341(a) hearing to September 16, 2010. (Id.) A meeting of creditors was held on September 16, 2010 as well as on October 28, 2010.

On September 21, 2010, the bankruptcy court issued an order that required creditors to file their claims on or before December 20, 2010. Union Bank was the only creditor to file a claim. On July 19, 2011, the Debtor filed a stipulation between the Debtor and Union Bank

to withdraw Union Bank's claim conditioned on dismissal of the bankruptcy case. (Appellant's Excerpt 12.)

On August 8, 2011, the Trustee filed an application for compensation and reimbursement of costs for the period from February 25, 2010 through August 8, 2011. (Appellee's Excerpt 12.) The Trustee sought fees in the amount of $10,215.00 and costs in the amount of $132.70. The Debtor filed an opposition to the Trustee's motion. (Appellee's Excerpt 13.) The Debtor argued that the Trustee took unreasonable positions throughout the case and that the administration of the estate was hampered and not enhanced by most of the trustee's activity. (Id. at 4-5.)

On September 8, 2011, the bankruptcy court held a hearing on the Trustee's application for fees and costs as well as the pending motion to dismiss. (Appellant's Excerpt 16.) The court granted the Trustee's application, awarding him the full $10,347.70. (Appellee's Excerpt 15.) The court denied the motion to dismiss because the Trustee is an administrative claimant. (Appellee's Excerpt 14.)

The Debtor appeals the court's award of fees and costs.

## II. STANDARD OF REVIEW

A bankruptcy court's finding of fact are reviewed for clear error, and its conclusions of law are reviewed do novo. In re Strand, 375 F.3d 854, 857 (9th Cir. 2004). A bankruptcy court's award of professional fees will not be disturbed absent a finding that the court abused its discretion or erroneously applied the law. In re Travel Headquarters, Inc., 140 B.R. 260, 261 (9th Cir. BAP 1992) "In order to reverse a decision, the reviewing court must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached." Id.

//
//
//
//

## III. DISCUSSION

The Debtor argues that the bankruptcy court's award of fees and costs to the Trustee should be reversed because the bankruptcy court did not properly employ the criteria of 11 U.S.C. § 330(a). The Court disagrees. As discussed below, the bankruptcy court did not abuse its discretion or erroneously apply the law in awarding fees and costs to the Trustee.

Section 330(a) lists the criteria that a bankruptcy court must consider in determining the amount of reasonable compensation to be awarded a trustee. These factors include "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C).

Section 326(a) sets forth the maximum compensation payable to a Chapter 7 trustee. Under this section, the trustee's compensation is limited to a percentage of the funds disbursed by the trustee.[1]

In this case, no disbursements were made by the Trustee. Consequently, the bankruptcy court relied on the theory of quantum meruit in awarding the fees and costs. Specifically, the court relied on In re Jankowski, 382 B.R. 533 (Bankr. M.D. Fla. 2007). In Jankowski, the court awarded quantum meruit compensation to the trustee for carrying out his duties, including investigating the Debtor's financial affairs and opposing the Debtor's motion to convert and motion to dismiss. Although the case was ultimately voluntarily dismissed, the court held that the services provided by the trustee were in furtherance of the trustee's duties under § 704 and were compensable. See also In re Tweeten Funeral Home, 78 B.R. 998 (Bankr. D.N.D. 1987) (awarding quantum meruit trustee fees where the debtors,

---

[1] Section 326(a) provides: "In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

trustee, and creditors entered into a settlement which resulted in no funds coming into the hands of the trustee for distribution); In re Smith, 51 B.R. 273 (Bankr. D.D.C. 1984) (holding that trustee was entitled to quantum meruit compensation where the creditor was satisfied as a result of consent order); In re Pray, 37 B.R. 27 (Bankr. M.D. Fla. 1983) (awarding quantum meruit compensation to trustee where case was voluntarily dismissed by the debtors based on resolution of creditors' claims).

Here, the Debtor does not challenge the quantum meruit aspect of the bankruptcy court's ruling, but, rather, argues that the Trustee's services were not necessary or beneficial, as required by § 330(a)(3)(C). According to the Debtor, the Trustee was "churning," and his actions – including insisting on going forward with the meeting of creditors, filing the motion to compel attendance, and opposing the motion to dismiss – were not reasonable or necessary to the administration of the case. (Appellant's Opening Brief at 8.)  The Debtor contends that the bankruptcy court did not apply the criteria of § 330(a)(3)(C) to the case.

The Court has reviewed the record, and finds that the bankruptcy court considered the § 330(a) criteria and properly applied them.  At the hearing, the bankruptcy court explained that because the Debtor chose not to appear at the April 26, 2010 creditors' meeting and not to produce the documents requested by the Trustee, it was reasonable for the Trustee to oppose dismissal. (Appellant's Excerpt 16 at 22.)  The court explained that if Mr. Mahmood was so concerned about privacy, he should have asked for a protective order from the court instead of refusing to turn over critical documents. (Id. at 12.)   The court also noted that dismissal was not warranted while the claims of Union Bank and Kirby Noonan remained unresolved. (Id. at 18.)  Although the Debtor eventually resolved all of the claims, not all of the creditors were satisfied at the time the Debtor brought his motion to dismiss. The Debtor had the benefit of the automatic stay for an extended period of time, allowing him to slowly reach resolution of the claims. (Id. at 17.)

//
//
//

At the end of the hearing, the bankruptcy court summarized its findings as follows:

> In terms of the appropriately requested section 330 findings, I find that the compensation is necessary and reasonable within the four corners of this case. The Trustee was required to attend and prepare for not one, not two, but four 341(a) meetings. There was extraordinary efforts required to have the 341(a) meetings continued to an appropriate conclusion.
>
> The Court's involvement in the case was unusual. The court was required to issue an order to show cause appointing an individual for the debtor to appear at the 341(a) meeting. Yes, the Debtor complied, but the Trustee was required to seek that relief from the court. And, again, the court finds that extraordinary in its experience albeit limited as a judge for only four years.
>
> The court was required to also hold multiple hearings in this matter. Dismissal was not an easy path. And the Trustee was asked to take a position on dismissal when the Trustee knew that there were documents not provided, the Trustee knew that the 341(a) meeting had not concluded, the Trustee knew that there were questions in the case.
>
> And I think Mr. Kipperman is correct, Mr. Winfree. His fiduciary duty to the creditors of the estate requires that he get answers to those questions before he acquiesces and allows the case to go away. Given the questions regarding document turn-over, given the questions regarding 341(a) answers, Mr. Kipperman would be reasonable in assuming there might be other creditors.
>
> So, again, his involvement I do not find to have been in any sense unnecessary and I do not find the requested fees to be unreasonable. The rate is not unreasonable. Mr. Kipperman is one of our most experienced Trustees. And the number of hours that he's asking for, 22, just short of 23 hours, again, is not unreasonable given the various factors in this case. Again, the Trustee was not in a position to review documents until many, many hearings and actions had taken place in the case.
>
> So Im going to award the fees and costs. I'm going to find they're appropriate under 330. In my tentative, I reference the case from the Middle District of Florida, <u>Jankowski</u>, for the purpose that a quantum meruit award in this regard is appropriate. And I think <u>Jankowski</u>'s facts, if [sic] similar, the analysis is very applicable to the case at hand.

(<u>Id.</u> at 22-23.) [2]

The bankruptcy court explicitly applied the § 330 criteria and properly concluded that

---

[2] The Debtor, in its opening brief, suggests that the bankruptcy court improperly focused on the allegations of the Trustee that at the § 341(a) meeting on September 16, 2010, Mr. Mahmood testified that he had taken about $190,000 of returned checks and collected approximately $150,000, which he used to reimburse himself for money he spent in settling claims for which he was jointly liable. The Debtor argues that the timing of when Mr. Mahmood took out this money (pre or post-petition) is unclear and that the bankruptcy court unfairly relied on this information. According to the Debtor, the court had a tainted view of Mr. Mahmood, resulting in a punitive award instead of a compensatory one. However, upon review of the transcript it does not appear that the bankruptcy court placed undue emphasis on the Trustee's allegations regarding the $150,000. Although the court mentioned the allegations (Appellant's Excerpt 16 at 6-7), the court's decision was actually based on the Debtor's entire course of conduct and failure to provide complete and accurate information. The Court does not find any merit to the Debtor's claim that the bankruptcy court was prejudiced against the Debtor and awarded the Trustee fees and costs as a punitive measure.

the services provided by the Trustee were necessary to the administration of the case or beneficial toward the completion of the case. Section 330 "requires only that the services in question had a reasonable likelihood of benefitting the estate at the time they were provided, not that they actually did provide a benefit." In re Boyce, 2006 WL 3061633, at * 3 (E.D. Pa. 2006). Under 11 U.S.C. § 704(a), the Trustee was charged with the duty to, among other things, "collect and reduce to money the property of the estate for which such trustee serves," "investigate the financial affairs of the debtor," and "if advisable, oppose the discharge of the debtor." Given the Trustee's statutory duties, when the Debtor did not appear at the creditors' meeting and did not produce the financial documents requested by the Trustee, it was reasonable for the Trustee to bring a motion to compel attendance.

It was also reasonable for the Trustee to oppose the motion to dismiss due to the Debtor's lack of cooperation and indications from creditors, including Union Bank and Kirby Noonan, that their claims had not actually been resolved as represented by the Debtor. "[D]ismissal of a case after it has appeared that the debtors failed to account for their assets should not be permitted because such a failure indicates the likelihood of further questionable practices to the detriment of creditors." In re Turpen, 244 B.R. 431, 435 (8th Cir. BAP 2000). As explained by the court in Jankowski, "the Trustee was bound to oppose the dismissal of the case if it appeared that the claims of creditors would not be protected outside of bankruptcy." 382 B.R. at 544.

In sum, the bankruptcy court did not abuse its discretion in finding that (1) the Trustee's efforts, which included compelling compliance by the Debtor and opposing dismissal in order to protect the interests of the creditors, were necessary to the administration of the case and reasonably likely to benefit the estate; and (2) given the complications in the case, it was reasonable for the Trustee to seek compensation for 22.7 hours of work at the Trustee's regular rate of $450 per hour. Therefore, the Court affirms the bankruptcy court's decision.

## IV. CONCLUSION

For the reasons discussed above, the bankruptcy court's Order Approving Final Application of Trustee for Compensation and Reimbursement of Expenses, entered on September 29, 2011, is **AFFIRMED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: July 9, 2012

*Barry Ted Moskowitz*
BARRY TED MOSKOWITZ, Chief Judge
United States District Court